## Seavey *v.* Seavey, *Ex'r.*

When parent and child reside together, as members of one family, no contract to pay for services, or for articles furnished for family use, will be presumed, unless there is further proof of some contract or understanding that they are to be paid or accounted for.

Inventories of the estates of persons deceased are admissible as *primâ facie* evidence, for or against strangers, for many purposes; being made by persons appointed under authority of law, to investigate a matter of fact of general interest, under oath, and to make a return or report upon the subject, to be preserved of record.

THIS was an appeal from the decision of the commissioner of insolvency upon the estate of John W. Seavey, late of Rye, deceased. The declaration was in assumpsit, containing seven counts. The first was upon an account annexed, amounting to $2,304, in substance as follows:

1855: Dec. 23. To the use and occupation of lands in Rye, set off to the plaintiff, as her dower in the estate of J. L. Seavey, ten years, from August, 1845,   $600.00

To use and occupation of one fifth of the farm of J. L. Seavey, from September, 1846, nine years, being Ann Elizabeth's share,   324.00

To the labor and services of the plaintiff, as house-keeper, from August, 1845, ten years, at 9*s.* per week,   780.00

To use of stock, farming, and other utensils, and furniture, ten years, from August, 1845,   250.00

To wood and timber, cut from dower and land of plaintiff, during ten years, from August, 1845,   350.00

$2,304.00

The second count was special, for the use of dower, ten years; the third special, for the use of one fifth of the farm ten years; the fourth, a general count, for labor and services; the fifth, a general count, for the use and hire of divers goods and chattels; the sixth, a general count,

for goods, wares and merchandize sold and delivered; and the seventh, a special count, for wood and timber cut and sold.   Plea, the general issue.

On the trial it appeared that the plaintiff was the widow of J. L. Seavey, formerly of Rye, deceased; that her husband died in August, 1845, leaving her a widow with five children, three of whom were minors, and among the latter, J. W. Seavey, the defendant's testator, who was then less than 17 years of age.   One of the children, a daughter, was less than five years old.   The plaintiff administered on her husband's estate, and in her administration account, settled May 9, 1848, charged and was allowed $83.25, for the support of the infant daughter until seven years of age.   After the death of the husband and father, the mother and three minor children resided at home, until about November 13, 1847, when the eldest of the three, having come of age, and being about to be married, conveyed her interest in her father's estate to her mother, for $500.   Dower was assigned to the widow, March 16, 1847.   Immediately after his father's death, J. W. Seavey, the testator, took charge of the farm, and carried on his own share, his mother's dower, and the shares of his two sisters, who were minors, and continued to do so till his death, in December, 1855; he and his mother and two sisters living together in one family, as before the father's death, until the marriage of the eldest sister, and the conveyance of her interest to her mother; after which the mother, J. W., and the youngest sister, lived together, as before.   The mother did the work in the house, and J. W. carried on the lands.   In April, 1854, J. W. married, and after his marriage his wife took charge of the affairs in the house, so far as her health permitted, and the mother was absent ten or eleven weeks, during a portion of which period she received wages for her services. J. W. and his wife died of consumption in December, 1855, and both the mother and daughter presented to the

commissioner, and were allowed, claims for nursing them in their last sickness. There was evidence that J. W. cut and sold from the dower, and the fifth of the farm conveyed to the mother by the daughter, in November, 1847, with the mother's assent, wood and timber to some extent, and received the proceeds thereof. He also cut, partly from the dower and said fifth, and partly from his own share of the farm, and that of his youngest sister, timber, for a new barn, which he erected with the plaintiff's assent, upon her dower. J. W. paid the physician's bills of his mother and youngest sister, with the proceeds of hay sold from the lands he carried on. After the marriage of J. W., his mother and youngest sister, himself and wife, constituted the family, as before, the only difference being that his wife presided at table, and took charge of the household affairs, instead of his mother. On one occasion J. W., with his mother's assent, received in labor upon the farm, $11 rent for a portion of the house occupied by a family, and which belonged to the mother. Occasionally the mother sold produce of the farm and dairy, and therewith purchased clothing for herself and youngest daughter, and groceries for the use of the family; and J. W. sold wood, timber and produce of the farm, and therewith purchased shingles, and paid for labor in re-shingling the house, and for constructing and shingling the new barn on his mother's dower, with her assent. There was no evidence that any discord or controversy in relation to the management of the farm, or to the affairs of the household, ever occurred between the mother and son, or that any charges or claims were ever made or adjusted between them. The plaintiff had offered evidence tending to show the expenses of her son in his sickness, to explain this; and to show the improbability of the alleged indebtedness of the son to his mother, the defendant offered in evidence, together with evidence of the amount of the plaintiff's property, a copy of the

inventory of the son's estate, from the probate office.   To this copy the plaintiff objected, as incompetent, but the court admitted it.

The court instructed the jury that where the relation of parent and child is shown to exist, the law will presume no other; that the superior relation is presumed to continue, until some evidence is offered that the inferior one of debtor and creditor, or master and servant, has been substituted for it.   In the present case they would presume that the relation of parent and child continued between the parties, and governed their transactions and intercourse with each other, unless there was some evidence that an express or implied contract was entered into between them, changing that relation and substituting for it that of debtor and creditor, or master and servant.   If there was any evidence before them that any express contract was ever entered into between the parties, creating between them the relation of debtor and creditor, or master and servant, they should consider it, and give to it its full weight, and find by their verdict for the plaintiff whatever indebtedness accrued to her from such express contract; and so, if there were any evidence of any implied contract ever existing between the parties, whereby the son became indebted to the mother, they would find for her the amount of such indebtedness.

The court further instructed the jury, that they should charge the defendant with the value of wood and trees cut upon the mother's portion of the father's estate, if they found, upon the evidence, that the wood and trees were cut, or the proceeds thereof, received by the defendant, with any agreement, understanding or expectation between the deceased and his mother, at the time, that the deceased was to pay for them.   If the deceased had the property, or the use of property belonging to his mother, or her services, under any agreement, or with any understanding or expectation between the parties at the time, that the

Seavey *v.* Seavey.

deceased was to account or pay for them, the plaintiff was entitled to recover for them. But if they found from the evidence that there never was any express contract or implied understanding between the parties, by which either became indebted in any way to the other ; if all the transactions between them arose from the relation of parent and child, as it existed between them in the family, with no express or implied agreement or expectation between them, at the time, that any indebtedness was to result therefrom, the plaintiff could not recover. If there was no agreement, understanding or expectation, at the period of the transactions between the parties, that the son was thereby to become indebted to the mother, or the mother to the son, it was not in the power of either afterwards, upon any change of circumstances, to make a valid claim of indebtedness by reason thereof.

The court further instructed the jury, that if they found, upon the evidence before them, that the parties carried on the farm together, with any agreement, understanding or expectation, that each was to account to the other for any balance of the proceeds received by one, that belonged to the other, and they found, upon such accounting, that the son at his death was thereby indebted to his mother, they would give her by their verdict the amount of such indebtedness.

The jury found a verdict for the defendant, which the plaintiff moved should be set aside for the supposed errors in the admission of evidence, and in the instructions.

*W. H. Y. Hackett,* for the defendant.

The first exception of the plaintiff is to the admission of the copy of the inventory of the estate of John W. Seavey, the defendant's testator. Both the plaintiff and the deceased derived their property from J. L. Seavey, who was the husband of the former and the father of the latter. The plaintiff, having at the trial put in a copy of the

inventory of the estate of said J. L. Seavey, the setting off of her dower, and the deed from A. E. Seavey to her, and offered evidence tending to show the expenses of the deceased in his last sickness, the defendant put in a copy of the inventory of the estate of his testator, to explain and rebut the plaintiff's evidence : 1. By showing that the defendant's intestate retained, at his death, all the estate which his father had left him, and had added to it ; and (2.) by comparing the property of the mother and of the son, and the increase of both, to show that both had participated in the income of the estate which had been carried on by their joint efforts, and to negative the idea that one had the income exclusively, and owed the other a debt for services.

The issue was, what had been the relation of these parties ?   Who had the income of the farm ?   The evidence which the plaintiff had put in rendered the evidence which the plaintiff excepted to proper.   25 N. H. (5 Foster) 425.

The other exception has been fully considered and determined by this court, in *Munger* v. *Munger*, 33 N. H. 581.

*A. R. Hatch*, for the plaintiff.

I   The inventory of the estate of J. W. Seavey was not competent evidence.

1. The fact that J. W. Seavey left more or less property at his decease, had no legitimate bearing on the issue.

2. And if the facts which the inventory purports to show were admissible, the inventory was not proper evidence to show them.   It was *ex parte*, imperfect, and manufactured by the defendant himself.

II. The case of *Munger* v. *Munger*, 33 N. H. 581, does not apply to the plaintiff's claim for the use of the property, real and personal ; nor to the wood cut by the deceased, nor to the rents received by him.   The ordinary

presumptions of law apply to such claims, notwithstanding the relationship of the parties.

III. The court instructed the jury to find, from the evidence, whether there was "an implied contract," or promise. This was erroneous.

BELL, J. There is a large class of proceedings, which are not judgments, and which, in many cases, can be regarded as judicial proceedings only by a very liberal construction of that term, which are admissible in evidence. They are the results of inquiries, made under public authority, concerning matters of public or general interest, though the affairs to which they relate may be private. They are generally the conclusions of juries, commissioners, or other officers under oath, and often, though not necessarily, based on evidence taken under oath.

Among the cases cited in the books, of the admissibility of this kind of evidence in England, are Damesday Book, inquisitions *post mortem*, inquisitions of lunacy, inquisitions relating to crown lands, under commissions from the court of exchequer, inquisitions relative to the fees of public officers, under an order of the house of commons, sheriffs' inquests, under a writ *de proprietate probanda*, in replevin, coroners' inquests of *felo de se*, and many other inquisitions. The *valor beneficiorum*, surveys of church and crown lands, taken by commissioners under the parliament, *inquisitiones nonarum*, and the like, which are enumerated and described in 2 Phil. Ev., chap. 1, sec. 8, pp. 95 and 96.

These proceedings are generally unknown in our practice, but the principle on which they are admitted is nevertheless a part of our law. That principle is, that whenever persons are appointed by the law, or under the authority of law, to investigate any matter of fact under oath, and to make a return or report upon the subject, the same being the foundation of no judgment or judicial

decree between parties, the return or report so made is admissible in evidence between those who were in no sense parties to the proceeding. It is, however, in general, *primâ facie* evidence only, and not conclusive, though in some cases made conclusive by statute.

Among the cases where evidence is admitted among us upon this principle, is the case of the proceeding before the court of probate, which takes the place of the inqusition of lunacy. By statute, these proceedings are made conclusive upon those who deal with the *non compos* in the way of contracts, purchases, or sales, after certain public notices. Revised Statutes, chap. 150, secs. 20, 21.

But these proceedings are evidence of insanity, upon the question of capacity to make a will, or to commit a crime. *Hart* v. *Damon,* 8 Wend. 498; *Asterhant* v. *Shoemaker,* 3 Hill. 513; *Bannatine* v. *Bannatine,* 14 E. L. & E. 381; *Wadsworth* v. *Sherman,* 14 Barb. 171; *Leonard* v. *Leonard,* 14 Pick. 280; *Breed* v. *Pratt,* 18 Pick. 115; 2 Cowen & Hill's Notes to Phil. Ev. 218.

In this State it has been held that surveys, made by the selectmen of towns, by authority of the legislature, were evidence of the lines of those towns, in suits between individuals, owning lands bounded on the town lines. *Adams* v. *Stanyan,* 24 N. H. (4 Foster) 405; *Lawrence* v. *Haynes,* 5 N. H. 34.

So the perambulations required to be made by selectmen of the lines of their towns, at certain stated intervals, are evidence in any case, where those lines may come in question. *Ibid.*

The case of the inventory in question seems to us to stand upon the same ground, and to be governed by the same principles. It is made the duty of the court of probate to issue a warrant to three suitable persons, appointed by the court, to make a just and impartial inventory and appraisal, under oath, of all the real estate, goods and chattels of the deceased, and a correct schedule of his

notes and written evidences of debts, to be returned to the court. This is evidence against the administrator, because it is returned under his oath, but it is evidence for many purposes as to every body, because it is a return of facts made under oath, by persons appointed by authority of law, to make such appraisal and return. Phill. Ev. 95; *Willoughby* v. *McClure*, 62 Wend. 608.

We have carefully examined the charge of the court, to which exception is taken, and are of opinion that the instructions are in substantial conformity to the decision of the court in the case of *Munger* v. *Munger*, 33 N. H. 581. In that case it was held that, where a child continues to form a part of the same family with the father and mother, or one of them, each contributing their services in carrying on the farm, or other business, and in supporting the family establishment, the relation of parent and child alone would be presumed to exist between them, and no contract would be presumed by which one should become indebted to another, unless some proof of an express contract is offered, or such circumstances, connected with their dealings together, are shown, as fairly to warrant the inference that it was the understanding and expectation of the parties, on both sides, that such services were to be paid for by another party.

The same rule must equally apply to the case where children, residing with parents, carry on in common the property they respectively own, the proceeds of the whole property being applied to the common benefit of the family, or to the improvement of the common property. The attention of the jury was distinctly turned to the point, that if there was any evidence which satisfied them that it was the agreement, understanding or expectation of the parties, that the articles for which payment is claimed were to be paid or accounted for, the plaintiff was entitled to recover.

*Judgment on the verdict.*