The fourth method of gaining a settlement prescribed by the statutes is, that "Any person of the age of twenty-one years, having real estate of the value of one hundred and fifty dollars, or personal estate of the value of two hundred and fifty dollars, in the town where he dwells and has his home, and paying all taxes duly assessed on him and his estate for four years in succession, shall thereby gain a settlement in said town." Gen. St., c. 73, s. 1, clause IV; Gen. Laws, c. 81, s. 1, clause IV. For four successive years David Corning dwelt and had his home in Derry, was the owner of real estate therein of more than four times the prescribed value, and paid all taxes assessed on him and his estate. He thus acquired a settlement in that town, to which his children became entitled under clause II.
The appraisal of David's real estate at $100 only by the plaintiff's assessors is not of controlling importance, and, at most, is but an evidentiary fact on the question of the true value of the property. If admissible at all in this suit as evidence on the question, the appraisal is nothing more than a record of the assessor's opinions, and is prima facie evidence only. The value intended by the statute is the actual market money value, to be ascertained in the ordinary way by an impartial tribunal. Neither in terms nor by implication does the statute make the valuation of town officials conclusive; but its literal as well as its fair reading is to the contrary. And so is the established rule of practice in cases of this kind which has uniformly obtained in this state from the earliest period of its judicial history. The question of the value of the pauper's estate in cases arising under the fourth mode has always been determined by the jury or by some other impartial tribunal; and to such a tribunal the parties are entitled in an action between municipalities in which value is a litigated question. Selectmen being directly interested in pauper settlements are not such a tribunal. In our view, this consideration of itself affords a sufficient reason why the construction heretofore given to the statute should not be changed. But, however this may be, such a reason is afforded by the fact that, with full knowledge of this construction, the legislature have permitted the statute to stand unchanged since its original adoption in 1796, and thereby have unmistakably signified their approval of the interpretation which it has ever since received.
But other reasons suggest themselves, and especially if the consequences of the plaintiff's construction are considered. It would not only enable them to take advantage of the selectmen's wrong in assessing the real estate in question at less than one sixth of its value, and thereby unjustly shift upon the defendants the burden of these paupers' support, without notice and with no opportunity to be heard, but it would greatly facilitate and make more common the illegal and prevalent practice of undervaluing real estate for purposes of taxation (Cocheco Co. v. Strafford, *Page 488 51 N.H. 482), and still further increase the inequality now existing in the valuation of the several towns (report of the Board of Equalization for 1882). It would punish honest towns for their honesty, and reward dishonest ones for their dishonesty; it would remove from town officials the salutary safeguard of a probable reviewal of their wrongful acts by another tribunal, and make them judges, although disqualified by interest as jurors, it would introduce an exceptional rule operating in pauper cases alone (which are now quite rare and likely to become more so in consequence of recent legislation), and thus tend to increase the inconsistent and incoherent character of the law, which ought to be, so far as it reasonably may be, a system of general and harmonious principles; — in a word, it would be an anomaly in the law, and one fraught with evil consequences only. And, moreover, whatever occasion there formerly may have been for the construction, on grounds of convenience and expediency resulting from the nature and difficulties of the proof, when the period of limitation in pauper settlements was half a century and upwards (Rev. St., c. 65, mode 10, s. 3, Laws 1861, c. 2482), has now largely ceased to exist by reason of the legislative action to which allusion has been made, and by which the liability of towns for the support of paupers has become limited to those who have acquired a settlement therein since the first day of January, 1870 This legislation deprives the decision in Berlin v. Bolton, 10 Met. 115, of much of the weight to which it would otherwise be entitled, and removes the only tenable ground for adopting the proposed rule and shutting out the truth; for, although the power exercised by selectmen in fixing the value of taxable property is in its nature judicial, it is only by a liberal construction that their appraisal in a case affecting their personal interests in a pauper settlement can be regarded as a judicial proceeding affecting the interest of another municipal corporation having no notice or opportunity to be heard; and if so regarded, it does not have the binding force of a judgment against the other corporation. If it is competent evidence against the county in this case (Seavey v. Seavey, 37 N.H. 125), it does not exclude the evidence offered by the defendants.
Case discharged.
SMITH, J., did not sit: the others concurred.